UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY GOODS,<br><br>    Plaintiff,<br><br>    v.<br><br>TIM V. VIRGA, et al.,<br><br>    Defendants. | No. 2:12-cv-1111-MCE-EFB P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. The sole remaining defendant, Behroz Hamkar, moves for summary judgment. ECF No. 41. Hamkar also moves to strike some of plaintiff's evidence submitted in opposition the motion. ECF No. 46. For the reasons that follow, the motion to strike is granted but summary judgment must be denied.

**I.    Background**

Plaintiff's verified complaint[1] alleges the following facts: On January 2, 2011, plaintiff's left knee was in such a state—swollen to four times the size of his right knee—that plaintiff could not walk. ECF No. 1 at 3, 4. He told a nurse at the prison (California State Prison, Sacramento,

---

[1] Plaintiff's verified complaint constitutes evidence (akin to an affidavit) for purposes of resolving summary judgment to the extent that it is: (1) based on plaintiff's personal knowledge, (2) sets forth admissible facts, and (3) sets forth facts to which plaintiff is competent to testify. *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985).

1

1  or "CSP-Sac") medical clinic that he could not walk and asked for crutches. *Id.* at 3. Plaintiff
2  was returned to his housing unit via wheelchair after being told he needed a doctor's order. *Id.*
3  He was also issued "a 115 Rules violation report for manipulation of staff . . . ." *Id.*

4        The following day, January 3rd, plaintiff was summoned to see defendant, Dr. Behroz
5  Hamkar. *Id.* at 3-4. Plaintiff told Dr. Hamkar that he was injured and showed him his left knee.
6  *Id.* at 4. Dr. Hamkar told plaintiff that he had called plaintiff in to let him know that he would be
7  responding in writing to an inmate appeal plaintiff had filed against Dr. Hamkar. *Id.* Dr. Hamkar
8  said he could not see plaintiff at that time regarding the knee injury. *Id.* Plaintiff alleges that this
9  refusal was motivated by and in retaliation for plaintiff's administrative complaint against Dr.
10 Hamkar. *Id.*

11       On January 10, 2011, Dr. Hamkar saw plaintiff for his knee injury and provided him with:
12 (1) crutches, (2) naproxen for swelling, and (3) an appointment for an x-ray. *Id.* Plaintiff alleges
13 that these things should have been provided on January 3rd. *Id.* On January 12, 2011, plaintiff
14 received an x-ray. *Id.* On January 24, 2011, Dr. Robert Bemrick found, on reading the x-ray, that
15 plaintiff was "at risk for ligament damage," but according to plaintiff Dr. Hamkar ignored this
16 information. *Id.* Dr. Hamkar diagnosed plaintiff with knee strain and prescribed physical
17 therapy. *Id.* Plaintiff questioned the diagnosis without Dr. Hamkar having taken an MRI
18 suggested by Dr. Bemrick to assess the potential ligament damage, but Dr. Hamkar ignored the
19 suggestion. *Id.*

20       On February 14, 2011, Dr. Dillion ordered an MRI for plaintiff, "as a result of [plaintiff's]
21 602 complaint." *Id.* The MRI was performed on March 8, 2011, and revealed that plaintiff had
22 "major multiligamentous injuries." *Id.* at 4, 8. On March 14, 2011, plaintiff went to an
23 orthopedic consultation with Dr. Dowbak at San Joaquin General Hospital. *Id.* at 4. Dr. Dowbak
24 suggested that plaintiff either undergo surgery or use a double-hinged knee brace with physical
25 therapy. *Id.* Although plaintiff opted for the brace and therapy he was not allowed to have the
26 double-hinged brace, because it has metal in it. *Id.* at 4-5. Plaintiff claims this treatment was
27 unfair because other inmates had double-hinged braces with metal. *Id.* Ultimately, Dr. Dillion
28 ordered plaintiff a neoprene brace with Velcro on April 18, 2011. *Id.* at 5.

After plaintiff filed an inmate grievance about not receiving the proper brace, Dr. Hamkar called plaintiff to his office on June 9, 2011 and told plaintiff that Dr. Hamkar would order the brace. *Id.* Dr. Hamkar also formally responded to the 602 grievance on June 29, 2011 by saying he would order the proper brace. *Id.* When plaintiff had not received the brace after 60 more days, he asked the patient advocacy liaison, R.N. Liuggi, why. *Id.* She told him that Dr. Hamkar had changed his mind and would not order the brace. *Id.* A second inquiry by plaintiff yielded the same response on October 5, 2011; Dr. Hamkar stated that plaintiff's knee injury did not "meet criteria of medical necessity." *Id.*

Plaintiff claims that Dr. Hamkar was not qualified to treat his knee injury and that the treatment he provided was deliberately indifferent in violation of the Eighth Amendment to the U.S. Constitution and that Dr. Hamkar refused him treatment in retaliation for his prison grievances in violation of the First Amendment. *Id.*

## II.     Defendant's Motions

### A.  Motion for Summary Judgment Standards

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally,

under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id*. at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id*. at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'). Whether a factual dispute is material is

1  determined by the substantive law applicable for the claim in question. *Id*. If the opposing party
2  is unable to produce evidence sufficient to establish a required element of its claim that party fails
3  in opposing summary judgment. "[A] complete failure of proof concerning an essential element
4  of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S.
5  at 322.

6  Second, the dispute must be genuine. In determining whether a factual dispute is genuine
7  the court must again focus on which party bears the burden of proof on the factual issue in
8  question. Where the party opposing summary judgment would bear the burden of proof at trial on
9  the factual issue in dispute, that party must produce evidence sufficient to support its factual
10 claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.
11 *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Rather, the opposing party must, by affidavit
12 or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue
13 for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to
14 demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such
15 that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*,
16 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

17 The court does not determine witness credibility. It believes the opposing party's
18 evidence, and draws inferences most favorably for the opposing party. *See id*. at 249, 255;
19 *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the
20 proponent must adduce evidence of a factual predicate from which to draw inferences. *American*
21 *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J.,
22 dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at
23 issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th
24 Cir. 1995). On the other hand, the opposing party "must do more than simply show that there is
25 some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could
26 not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for
27 trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant
28 summary judgment.

1        Concurrent with the instant motion, defendant advised plaintiff of the requirements for
2 opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Woods v.*
3 *Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en
4 banc), cert. denied, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**B. Motion to Strike**

6        Defendant objects to plaintiff's Exhibits B and E, offered in opposition to the motion for
7 summary judgment. These exhibits contain various printed information of unknown provenance
8 about knee ligament injuries. ECF No. 44 at 24-34, 41-44. Some pages of this information
9 appear to originate from the internet, others from a text or journal. Defendant concedes that, "to
10 survive summary judgment, a party does not necessarily have to produce evidence in a form that
11 would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of
12 Civil Procedure 56." *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). "In other
13 words, when evidence is not presented in an admissible form in the context of a motion for
14 summary judgment, *but it may be presented in an admissible form at trial*, a court may still
15 consider that evidence." *Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D.
16 Cal. 2006) (emphasis in original). Defendant nonetheless argues that Exhibits B and E are too
17 unreliable to be considered in opposition to summary judgment.
18        There is no question that Exhibit B and E's ligament injury printouts and/or photocopies
19 would not be admissible at trial in their current form. *See Internet Specialties West, Inc. v.*
20 *ISPWest*, No. CV 05-3296 FMC (AJWx), 2006 U.S. Dist. LEXIS 96373, at *3-4 (C.D. Cal. Sept.
21 19, 2006) ("To be authenticated, someone with knowledge of the accuracy of the contents of the
22 internet print-outs must testify.") (citation omitted); *see also United States v. Jackson*, 208 F.3d
23 633, 638 (7th Cir. 2000) (holding that evidence taken from the Internet lacked authentication
24 where the proponent was unable to show that the information had been posted by the
25 organizations to which she attributed it); *Wady v. Provident Life & Acc. Ins. Co. of Am.*, 216 F.
26 Supp. 2d 1060, 1064-65 (C.D. Cal. 2002); *St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F.
27 Supp. 2d 773, 775 (S.D. Tex. 1999) ("Anyone can put anything on the Internet. No web-site is
28 monitored for accuracy and nothing contained therein is under oath or even subject to

independent verification absent underlying documentation."). Unfortunately for plaintiff, nothing is presented or is otherwise before the court to support the position that the information in the exhibits could be presented in an admissible form at trial, as there is no indication where most of the information came from or anything that would indicate its veracity, reliability, or the existence of an individual who could testify that it is true. While some of the pages bear the imprint "The Open Rehabilitation Journal" (ECF No. 44 at 43-44), there is no affidavit authenticating these pages, nor any indication that the source is reliable. Accordingly, Exhibits and B (except for the initial page, which is a printout from plaintiff's MRI report) and E cannot support plaintiff's opposition to the motion.

Defendant also seeks to strike plaintiff's Exhibit N, which consists of three inmate declarations describing allegedly deficient care provided to them by defendant. ECF No. 44 at 73-76. While this testimony could potentially be presented in a non-hearsay form through live testimony at trail, the court agrees with defendant that the content of these declarations is nonetheless inadmissible character evidence under Federal Rule of Evidence 404 and has not considered it in making the recommendation herein.

**III.   Analysis**

   **A.  Eighth Amendment Claim**

Plaintiff claims that defendant was deliberately indifferent to his knee injury in violation of the Eighth Amendment. The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions-of-confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred. The more

/////

basic the need, the shorter the time it can be withheld." *Johnson v. Lewis*, 217 F.3d 726, 731-732 (9th Cir. 2000) (quotations and citations omitted).

To succeed on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must establish that: (1) he had a serious medical need and (2) the defendant's response to that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096. A deliberately indifferent response may be shown by the denial, delay or intentional interference with medical treatment or by the way in which medical care was provided. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Thus, a defendant will be liable for violating the Eighth Amendment if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.

A plaintiff does not have to establish that the defendant physician totally failed to treat him to show an Eighth Amendment violation, but must show wrongdoing amounting to more than medical negligence. *Farmer*, 511 U.S. at 835 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence."); *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989). In addition, mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). On the other hand, a failure to provide access to medical staff that is competent to render care may constitute deliberate indifference in a particular case. *Ortiz*, 884 F.2d at 1314 ("[A]ccess to medical staff is meaningless unless that staff is competent and can render competent care.").

/////

1    Defendant does not dispute for the purposes of this motion that plaintiff's knee injury
2  presented a serious medical need.  Defendant argues only that his response to the injury was not
3  deliberately indifferent.  Plaintiff's complaint identifies three areas in which he claims
4  defendant's care was deficient: (1) failure to treat plaintiff on January 3, 2011; (2) failure to refer
5  plaintiff for an MRI and to an orthopedist after plaintiff's x-ray on January 24, 2011; and (3)
6  failure to provide plaintiff with a double-hinged knee brace.

7    As to plaintiff's first complaint, defendant claims that he *did* treat plaintiff's complaint of
8  knee injury on January 3, 2011.  Defendant declares, "Goods was called to my office [on that
9  date] for an interview so that I could prepare a response to a grievance Goods had submitted
10 related to his medical care . . . .  I visually observed his knee and did not note any swelling or
11 injury . . . .  Based on my medical training and experience, my visual assessment of Goods's
12 knee, and my knowledge that Goods had osteoarthritis and prescription for pain management, I
13 determined that additional medical treatment was not clinically indicated at that time."  ECF No.
14 41-6 (defendant's declaration ISO summary judgment), ¶ 6.  Defendant's proffered expert, Dr.
15 Bruce Barnett, a physician employed by the California Department of Corrections and
16 Rehabilitation ("CDCR"), opines that defendant's care of plaintiff fell within the prevailing
17 professional norm, based on his review of plaintiff's health records, "relevant medical literature,"
18 and his own training and experience.  ECF No. 41-7 (declaration of B. Barnett), ¶ 11.

19    Plaintiff contends that defendant refused to treat his knee injury on January 3rd, stating
20 that plaintiff was called to his office solely to address the grievance plaintiff had filed.  ECF No.
21 44 at 3-5.  Plaintiff disputes defendant's claim that there was no swelling of the knee by pointing
22 to a staff notation of the prior day, in which the author recorded his or her observation of swelling
23 in plaintiff's left knee.  ECF No. 41-4 at 7 (staff note stating observation of "swelling to the left
24 knee" dated January 2, 2011).  Plaintiff also points out that on January 10, 2011, defendant
25 himself wrote the notation "swelling decreased" in plaintiff's chart.  *Id.* at 16.  If defendant had
26 not seen swelling on the 3rd, argues plaintiff, how could he notice that it had decreased by the
27 10th?  Plaintiff argues that, if defendant *had* treated his knee injury on the 3rd, he would have
28 provided him with the same care he provided later on the 10th (crutches, naproxen for swelling,

9

1   and an x-ray referral). ECF No. 1 at 4. The only notation from defendant regarding the January
2   3, 2011 interaction bears no mention of plaintiff's left knee injury but instead appears to be a
3   response to a request from plaintiff for a cane, back brace, bed cushions, and egg crate mattress,
4   which notes that plaintiff had prescriptions for Tramadol and ibuprofen. ECF No. 41-4 at 13.
5   Plaintiff further calls Dr. Barnett's impartiality into question, as an employee of CDCR. ECF No.
6   44 at 1-2.

7       Plaintiff has demonstrated a genuine dispute as to whether defendant treated or ignored
8   plaintiff's knee injury on January 3, 2011. The evidence indicating that swelling was present the
9   day before and the week after that appointment supports the reasonable inference that is was
10  present and noticeable on January 3, when plaintiff claims he sought treatment for it. Although
11  defendant on this motion denies noticing it on January 3rd, a reasonable jury could rely on the
12  report of January 2 and the defendant's own notation on January 10 to discredit that assertion. In
13  doing so, a jury could also consider the context of defendant having just summoned plaintiff to
14  comment on his 602 complaint against defendant. While Dr. Barnett opines generally that
15  defendant's care was adequate, he does not state that a refusal to treat--if that is what occurred--is
16  adequate. Further, a jury could reasonably discount the weight of his opinion in light of his
17  employment relationship with CDCR as well as the other evidence bearing on the allegation of a
18  refusal to treat. In summary, the credibility questions cannot be resolved on summary judgment
19  and the evidence currently before the court would permit a jury to conclude that defendant failed
20  to respond reasonably to plaintiff's injury on January 3rd.

21      As to the need for an MRI and/or orthopedic consultation, defendant declares that he
22  considered several factors, including Dr. Bemrick's x-ray report, at his follow-up appointment
23  with plaintiff on January 24, 2011, in determining that plaintiff did not need either on January 24,
24  2011. ECF No. 41-6, ¶ 8. According to defendant, on that day plaintiff reported that he was
25  feeling better and the swelling of the knee had decreased. *Id.*; ECF No. 41-4 at 20 (chart note
26  authored by defendant on January 24, 2011, stating, "He states feeling better, swelling down,
27  complains of pain."). Plaintiff could walk with crutches. ECF No. 41-6, ¶ 8. Defendant
28  performed "a lateral stress test, anterior drawer test, and posterior drawer test" on plaintiff's left

knee, all of which came out negative. *Id.* He diagnosed plaintiff with "left knee injury or strain, effusion, and possible internal derangement." *Id.* He told plaintiff to keep taking Tramadol for pain and keep using the crutches and referred him to physical therapy. *Id.* Dr. Barnett again opines that defendant's care was adequate. ECF No. 41-7 at ¶ 11.

Plaintiff argues that defendant performed the knee tests incorrectly either due to incompetence or in a deliberate attempt to obscure plaintiff's injury, as a later MRI in fact revealed plaintiff to have multiple ligament tears. ECF No. 44 at 5-7. Plaintiff flatly contradicts defendant's assertion that plaintiff told defendant on January 24, 2011 that he was feeling better. *Id.* at 6. He notes that the MRI of March 7, 2011 also revealed swelling, indicating that plaintiff's knee had continued to be swollen from the time it was injured through that date. ECF No. 41-4 at 27 (MRI report noting multiple areas of edema in the left knee). Again, the court cannot resolve credibility on summary judgment and the rationale offered for not performing the MRI recommended by Dr. Bemrick is predicated on a statement attributed to plaintiff that he denies making. Further, a jury's credibility assessment on this issue will be informed by how it evaluates the evidence and resolves credibility as to the refusal to treat allegations. In short, the court has conflicting evidence and testimony demonstrating genuine disputes bearing on the question of whether it was reasonable for defendant not to order an orthopedic consult and/or MRI on January 24, 2011. The issue is thus not appropriate for summary adjudication.

As to plaintiff's claim that defendant, with deliberate indifference, failed to provide him with the proper, double-hinged, knee brace, defendant argues that he ordered the brace for plaintiff in accord with Dr. Dowbak's recommendation in June 2011, subject to approval by custodial staff, but determined in October 2011 (plaintiff had not received the brace in the interim) that plaintiff did not need such a brace. Plaintiff had three left knee braces at that time, but none with a double hinge. ECF No. 41-6 at ¶ 11. Defendant

> noted that Goods ambulated without any difficulty, completed his activities of daily living without any limitations, and exercised regularly. My examination of Goods's UHR [institutional medical record] led me to believe that Goods ambulated without difficulty or limitation during his most recent encounters with healthcare providers. I conducted a physical examination, noting no effusion, laxity, or joint tenderness in the knee. I observed that Goods was able to sit, stand, squat, and walk without any limitation. I reviewed the medical chart, MRI,

11

>and orthopedist recommendations regarding Goods's knee.  Based upon my complete clinical assessment, it was my medical opinion that a double-hinged knee brace with metal components was not clinically indicated given Goods's high level of functioning.

*Id.*

In support of defendant's claim that it was reasonable to deny plaintiff the double-hinged brace, Dr. Barnett declares that he had a conversation with Dr. Dowbak, provides his own summary of portions of that conversation, and states that he has additionally relied on that conversation in forming his opinion that it was reasonable to deny the brace.  ECF No. 41-7 at ¶ 9.  Dr. Barnett provides these excerpts from his conversation with Dr. Dowbak: (1) that Dr. Dowbak "expressed his professional opinion that providing Goods a knee brace with metal hinges was not a medical necessity insofar as the brace was not needed to protect life"; (2) that "the medical literature does not establish that knee braces necessarily prevent further injury"; and (3) "that it would thus be reasonable, notwithstanding his initial recommendation, to not provide a double hinged knee brace for a number of reasons."  ECF No. 41-7 at ¶ 9.

Dr. Dowbak's statements to Dr. Barnett are hearsay.  The Ninth Circuit has held that, under Federal Rule of Evidence 703, experts may rely on hearsay if it is "that type of information upon which experts may reasonably rely."  *United States v. Sims*, 514 F.2d 147, 149-50 (9th Cir. 1975).  Perhaps Dr. Barnett's conversation with Dr. Dowbak falls within this exception to the hearsay rule, but it is unclear.  The court declines to rely on it to grant summary judgment on this record given Rule 703's additional command—where the facts relied on by the expert would otherwise be inadmissible, the expert may disclose them to the factfinder "only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."  The court finds the use of the hearsay information from Dr. Dowbak in Dr. Barnett's declaration problematic.  The statements provided are isolated from the entire conversation and the absence of context may obscure their meaning.  Defendant has not provided a declaration from Dr. Dowbak, so that the court could view the entire scope of his opinion, including portions that may not favor defendant.  Nor is there a deposition of Dr. Dowbak that would serve that purpose.  The portions that are provided are of limited value, as the question in this case is not whether plaintiff

needed the brace in order to live, but rather whether denying it would subject plaintiff to unnecessary and wanton suffering.[2]  Accordingly, at this point in the proceedings, the probative value of Dr. Barnett's declaration insofar as it relies on or summarizes his conversation with Dr. Dowbak does not substantially outweigh its prejudicial effect.  Further, this factual dispute is not presented in isolation.  How a jury ultimately assesses credibility and resolves the dispute over the alleged refusal to treat, and the dispute concerning the statement Dr. Barnett attributes to plaintiff in articulating the reason for not obtaining the MRI that had been recommended by Dr. Bemrick could significantly influence the jury's factual finding as to the articulated basis for denying the double-hinged brace recommended by Dr. Dowbak.

Plaintiff disputes that he could ambulate without difficulty after he sustained his left knee injury.  ECF No. 44 at 10.  He states that he has not exercised since sustaining the injury because of pain and instability in that knee.  *Id.*  He also claims that defendant did not perform the examinations of his knee that defendant states he has done (and that he recorded in plaintiff's medical records).  *Id.* at 11.

While this last issue is a close one, plaintiff has shown a genuine dispute for trial. The evidence at trial may show that defendant's determination that plaintiff did not need the double-hinged brace was not deliberately indifferent, but merely an acceptable difference of opinion between himself, on one side, and Dr. Dowbak and plaintiff, on the other side.  However, plaintiff disputes defendant's characterization of his mobility, pain, and swelling.  There is evidence to support plaintiff's version of the facts but the disputes will turn on credibility which is for the jury to determine.  The court cannot resolve credibility on the paper record.  At this stage in the proceedings, viewing the evidence most favorably to plaintiff, plaintiff has raised a triable dispute as to whether it was reasonable to deny plaintiff the brace.

For the foregoing reasons, defendant's request for summary adjudication of plaintiff's Eighth Amendment claim must be denied.

/////

---

[2] In addition, plaintiff has raised a question about Dr. Barnett's impartiality in the context of the two other disputes addressed above.

### B. Retaliation Claim

Plaintiff also claims that the motivation for defendant denying him proper medical care was the fact that plaintiff had filed grievances against defendant. The Ninth Circuit summarized the law governing such a claim in *Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012):

> Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). A retaliation claim has five elements. *Id*. First, the plaintiff must allege that the retaliated-against conduct is protected. The filing of an inmate grievance is protected conduct. *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005). Second, the plaintiff must claim the defendant took adverse action against the plaintiff. *Id*. at 567. The adverse action need not be an independent constitutional violation. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). "[T]he mere threat of harm can be an adverse action . . . ." *Brodheim*, 584 F.3d at 1270.
>
> Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. *See Pratt*, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent"); *Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir. 1987).
>
> Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Robinson*, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," *Brodheim*, 584 F.3d at 1269, that is "more than minimal," *Robinson*, 408 F.3d at 568 n.11. That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage. *Id*. at 569.
>
> Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution . . . ." *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, *id*., or that they were "unnecessary to the maintenance of order in the institution," *Franklin v. Murphy*, 745 F.2d 1221, 1230 (9th Cir. 1984).

Defendant argues that, because the undisputed facts show that his care of plaintiff was reasonable, plaintiff cannot show any adverse action. ECF No. 41-1 at 17-18. However, as discussed above, triable issues of material fact exists over whether defendant's care was reasonable and would satisfy Eighth Amendment standards. Defendant also argues that plaintiff has produced no evidence showing that defendant was motivated by a retaliatory purpose. Yet, the evidence before the court clearly shows that defendant was treating (or refusing to treat) plaintiff's injury

14

contemporaneously with responding to at least one grievance filed by plaintiff and specifically called plaintiff in to tell him that. Further, plaintiff has stated in his verified complaint that defendant was dismissive of his injury on January 3, 2011, telling plaintiff he was only going to address plaintiff's grievance on that day. ECF No. 1 at 4. This evidence would permit a reasonable jury to infer that defendant's conduct was motivated by a retaliatory purpose, and summary judgment on plaintiff's retaliation claim is therefore not appropriate.

### C. Qualified Immunity

A § 1983 defendant may be granted qualified immunity if his conduct did not violate a clearly-established right of which a reasonable person would have known. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Defendant argues that his conduct did not violate plaintiff's rights, so he should be granted qualified immunity.[3] As discussed at length above, triable issues of fact remain to be adjudicated on whether defendant did violate plaintiff's rights. Therefore, defendant is not entitled to a grant of qualified immunity at this time.

### IV. Order and Recommendation

For the reasons stated above, it is hereby ORDERED that defendant's June 3, 2014 motion to strike (ECF No. 46) is granted.

Further, it is RECOMMENDED that defendant's March 26, 2014 motion for summary judgment (ECF No. 41) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections

/////

---

[3] Defendant additionally argues that he should be granted qualified immunity because his conduct was reasonable. This semantical restatement of defendant's argument that he did not violate plaintiff's rights, is subject to the identical analysis. The crux of the constitutional questions is whether defendant's care of plaintiff was reasonable and whether the alleged failure to treat was due to a retaliatory motive. Disputed issues of material fact preclude summary judgment as to both claims.

within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  February 12, 2015.

                        EDMUND F. BRENNAN
                        UNITED STATES MAGISTRATE JUDGE