UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY GOODS, | No. 2:12-cv-1111-MCE-EFB |
| Plaintiff, | |
| v. | **ORDER** |
| TIM V. VIRGA, et al., | |
| Defendants. | |

Plaintiff, a state prisoner proceeding pro se, has filed this civil rights action seeking relief under 42 U.S.C. § 1983.  Plaintiff alleges that Defendant Dr. Behroz Hamkar was deliberately indifferent to a serious medical need in violation of the Eighth Amendment and retaliated against Plaintiff in violation of the First Amendment.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

On February 12, 2015, the magistrate judge filed findings and recommendations (ECF No. 49) recommending that the Court deny Dr. Hamkar's Motion for Summary Judgment (ECF No. 41).  Plaintiff and Defendant both filed objections to the findings and recommendations.  ECF Nos. 52-54.[1]  In accordance with the provisions of 28 U.S.C.

---

[1] Plaintiff's objections were to an order granting Defendant's motion to strike, which was issued in the findings and recommendations.  That order is final and was not reviewed by the Court.

1

§ 636(b)(1)(C) and Local Rule 304, this Court has conducted a de novo review of this case.  Having carefully reviewed the entire file, the Court does not find that the findings and recommendations are supported by the record and by proper analysis.  The Court thus rejects the findings and recommendations and grants summary judgment for Dr. Hamkar.[2]

Dr. Hamkar's motion for summary judgment is factually supported by Dr. Hamkar's own declaration, Plaintiff's medical record, and the declaration of Dr. Bruce Barnett, a physician with thirty years of experience who currently serves as the Chief Medical Officer for the California Prison Health Care Services.  After reviewing Plaintiff's medical record and speaking with an orthopedic specialist who had treated Plaintiff, Dr. Barnett determined that the medical care Dr. Hamkar provided to Plaintiff was within the applicable standard of care.  Barnett Declaration, ECF No. 41-7, ¶¶ 9, 11 (finding that Dr. Hamkar's care "was responsive, ongoing, careful, and considerate of [Plaintiff's] medical needs").[3]

Dr. Hamkar's evidence indicates that Plaintiff first reported a problem to the medical staff on January 2, 2011, despite having injured his knee almost a week prior on December 27, 2010.  Barnett Decl. at ¶ 10(a), (d).  The nurse who evaluated Plaintiff on January 2, 2011, noted that Plaintiff walked up and down the stairs without difficulty.  Id.

---

[2] Given the detailed factual summation and legal analysis provided in the findings and recommendations, which are incorporated herein by reference, the Court need not reiterate the circumstances underlying this matter except as specifically noted below.

[3] The findings and recommendations unnecessarily minimized the importance of Dr. Barnett's testimony, finding that it could be perceived by a jury as biased because of Dr. Barnett's employment with the Department of Corrections.  Dr. Barnett's declaration is admissible expert testimony.  Additionally, the opinion of the orthopedic specialists with whom Dr. Barnett spoke was incorrectly classified as hearsay.  This information was not offered for the truth of the matter asserted, but was offered to show how Dr. Barnett came to his expert opinion.  Under Federal Rule of Evidence 703, an expert may base an opinion on facts that he has been made aware of.  Dr. Barnett became aware of the fact that a double-hinged knee brace was not medically necessary by speaking with the orthopedic specialist.  Additionally, under Rule 703, the form of the facts does not need to be admissible for the opinion to be admitted.  While the findings and recommendations expresses concern that a jury may find this information prejudicial, at trial, the testimony from the orthopedic specialist would be presented in a different form (most likely through direct testimony).  At this summary judgment stage, this is an acceptable form of evidence.  See Fraser v. Goodale, 342 F.3d 1032, 1036-37 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form.  We instead focus on the admissibility of its contents.").

at ¶ 10(a). She determined that Plaintiff's knee condition did not require an emergency response, so she verified that Plaintiff had submitted a request for healthcare services and informed Plaintiff that he would be seen by a physician within a few days. Id. at ¶ 10(a). The following day, on January 3, 2011, Dr. Hamkar called Plaintiff into his office to interview him regarding a previously submitted grievance form. Hamkar Decl., ECF No. 41-6, ¶ 6. During the interview, Plaintiff showed Dr. Hamkar his knee. Dr. Hamkar visually observed Plaintiff's knee and did not note any swelling or injury. Hamkar Decl. ¶ 6. Dr. Hamkar noted that Plaintiff had current prescriptions for Tramadol and Ibuprofen to control pain and was in possession of a knee brace. Id.; ECF 41-4, Ex. A at 12-13.

A week later, on January 10, 2011, Plaintiff had an appointment with Dr. Hamkar for his knee injury. Dr. Hamkar conducted an anterior and posterior drawer test to assess ligament damage, both of which were negative. Barnett Decl. ¶ 10(d). Dr. Hamkar then ordered an x-ray, crutches, Naproxen for swelling, and continued Plaintiff on Tramadol. Id. On January 24, after the x-ray had been conducted, Dr. Hamkar met with Plaintiff to discuss the results. The x-ray report noted a later joint effusion and a possible risk of internal derangement, such as a ligament tear, and noted that an MRI could be obtained for further evaluation if clinically indicated. At this appointment, anterior and posterior drawer tests were conducted by Dr. Hamkar, again with negative results. Plaintiff stated that he was feeling better and that the swelling had decreased. Dr. Hamkar noted that Plaintiff was ambulatory on the crutches. He did not refer Plaintiff to an orthopedic specialist, despite Plaintiff's request, but did refer Plaintiff to physical therapy. Dr. Hamkar noted that an orthopedic consult was not clinically indicated. Hamkar Decl. ¶ 8; Barnett Decl. ¶ 10(f).

Dr. Hamkar did not see Plaintiff again until June 9, 2011. In the meantime, Plaintiff had continued to seek treatment for his knee. Another physician, Dr. Dhillon, ordered an MRI of Plaintiff's knee. Id. at ¶ 10(g). The MRI revealed ligament tears. Id. at ¶ 10(j). At the follow-up appointment, Dr. Dhillon referred Plaintiff to an orthopedic specialist. Id. at ¶ 10(k). The orthopedic specialist recommended either surgery or a

double-hinged knee brace and physical therapy. Plaintiff did not want surgery. Id. at ¶ 10(n). Dr. Dhillon and another physician, Dr. Du, both noted that a hinged knee brace containing metal is not authorized by the Department of Corrections. Id. at 10(o), (p). Instead, Plaintiff was given a neoprene knee brace with Velcro. Id. at 10(o). Finally, at Plaintiff's insistence, Dr. Hamkar put in a request for a specially-made double-hinged knee brace made with plastic components on June 9, 2011. Id. at 10(q). At a follow-up appointment on October 13, 2011, Plaintiff had yet to receive the double-knee brace, but appeared to ambulate without a limp or difficulty and could sit, stand, and walk without limitation. After performing a physical evaluation of the knee, Dr. Hamkar determined there was no medical indication for a metal-hinged knee brace. Id. at 10(v); Hamkar Decl. ¶ 9.

When all the evidence is properly considered, Dr. Hamkar has satisfied his initial burden in showing that he is entitled to judgment as a matter of law pursuant to Federal Rule of Civil Procedure 56(c). While prison inmates do have a constitutional right to medical care, liability attaches to prison authorities only if the medical care afforded is "deliberately indifferent" to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976); Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988). Plaintiff's medical record and the declarations of Dr. Hamkar and Dr. Barnett constitute evidence that the care provided Plaintiff herein was not "deliberately indifferent," but was within the medical standard of care. By showing "an absence of evidence to support the nonmoving party's case," Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), Dr. Hamkar shifted the burden to Plaintiff to demonstrate "specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). Even considering the facts in the light most favorable to Plaintiff, no reasonable juror could

conclude that Dr. Hamkar was deliberately indifferent to Plaintiff's serious medical needs.

As stated in the findings and recommendations, Plaintiff's complaint identifies three areas in which he claims Dr. Hamkar's care was deficient: (1) failure to treat Plaintiff on January 3, 2011; (2) failure to refer Plaintiff for an MRI and to an orthopedist after Plaintiff's x-ray on January 24, 2011; and (3) failure to provide Plaintiff with a double-hinged knee brace. While the magistrate judge found genuine, material issues of fact in each of these claims, the Court disagrees after conducting a de novo review.

First, the Court finds that the issue of whether Plaintiff was treated on January 3, 2011, is immaterial because even if treatment was not provided, Plaintiff has been unable to show any injury caused by the one-week delay in treatment. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

Dr. Hamkar argues that he did make a visual evaluation of the knee and treatment notes were included in Plaintiff's medical record from this incident. ECF No. 41-4, Ex. A at 12-13. The note states in its entirety:

> You were evaluated by Dr. Hamkar on 1-3-2011.
> I have discussed this issue with you on numerous encounters including your last 602 appeal. You have osteoarthritis, as is common in individuals your age. You are being treated with Tramadol for this and can take ibuprofen as needed. You have admitted to me proudly that you are able to play basketball and even dunk a basketball without any difficulty and perform your activities of daily living without any limitation. You have multiple braces, including two elbow, knee, wrist, and ankles. Furthermore, you have been provided with bran[d] new orthotic shoes. There are no medical indications for a cane, back brace or bed cushions. You do not meet CDCR criteria for egg crates mattress.

ECF No. 44 at 47. The Court finds that this note could be interpreted as discussing the grievance and Plaintiff's osteoarthritis complaints generally, not the knee specifically. A week later, at Plaintiff's scheduled appointment to discuss his knee, Dr. Hamkar conducted a physical evaluation and prescribed crutches, an x-ray referral, and

5

Naproxen for swelling. Plaintiff argues that this shows that he was not properly evaluated and treated at the first appointment. In addition, Plaintiff argues that if Dr. Hamkar had conducted a visual evaluation, he would have noticed that the knee was swollen. Plaintiff has pointed to evidence from the previous day, where the nursing staff noticed swelling, and future notes in his medical record and MRI results, which indicate that swelling was still present weeks later. Taken together, this evidence could lead a trier of fact to determine that Dr. Hamkar did not treat Plaintiff's knee injury on January 3, 2011.

Yet even if Plaintiff was not treated on January 3rd, the one-week delay in treatment is not enough to show deliberate indifference. While a delay in treatment can be construed as deliberate indifference, Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), the delay must cause substantial harm. Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990). As determined by the nursing staff on the previous day, Plaintiff's condition did not require emergency attention, nor did the delay substantially harm Plaintiff's treatment, considering that that he was already in possession of a knee brace and pain medication. Plaintiff was ambulatory without crutches and has pointed to no lasting harm caused by the one-week period where he did not have access to crutches. Allowing a short delay of treatment for a non-emergency illness when the Plaintiff is already in possession of pain medication and a brace to alleviate his pain is not enough to show that Dr. Hamkar knew of and disregarded "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Second, the Court finds that Dr. Hamkar's decisions not to order an MRI or refer Plaintiff to an orthopedic specialist were matters of medical judgment. See Estelle, 429 U.S. at 107 ("[T]he question of whether an xray or other diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment"). Plaintiff's disagreement with Dr. Hamkar's course of treatment is insufficient to demonstrate deliberate indifference. Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir.

1981).  The fact that other physicians eventually ordered an MRI for Plaintiff and sent him to an orthopedic specialist also does not show deliberate indifference by Dr. Hamkar.  By the time the MRI was ordered, Plaintiff's knee pain had continued to persist, despite the pain medications, knee brace, crutches, and physical therapy Defendant had previously prescribed.  A physician could reasonably determine that more testing was warranted at that point.  Plaintiff was not referred to a specialist until even later, when Plaintiff's MRI results revealed ligament tears.  Furthermore, even if there was disagreement between Dr. Hamkar and the other treating physicians, disagreement between medical personnel is not enough to support a deliberate indifference claim.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

     The findings and recommendations focused on the fact that Dr. Hamkar's decision not to order an MRI or refer Plaintiff to a specialist was based on Plaintiff stating he felt better, which is disputed by Plaintiff, and thus summary judgment is not appropriate.   However, Dr. Hamkar has produced evidence which shows that the decision was based on a variety of factors, including x-ray results, a physical evaluation, and "a lateral stress test, anterior drawer test, and posterior drawer test."[4]  Thus, the disagreement about whether Plaintiff stated he was "feeling better" is immaterial.  Anderson, 477 U.S. at 248.

     Finally, in regards to the double-hinged knee brace, after Plaintiff opted not to have surgery another physician prescribed Plaintiff a neoprene and Velcro brace due to a prison restriction on double-hinged knee braces containing metal.  This restriction was confirmed by multiple physicians, not just Dr. Hamkar.  While Dr. Hamkar eventually ordered a specially-made double-hinged knee brace made with plastic components at Plaintiff's insistence, he canceled that order months later after evaluating Plaintiff and

---

[4] While Plaintiff argues that Dr. Hamkar must have performed these tests incorrectly because a later MRI showed ligament damage, medical negligence is not enough to rise to the level of deliberate indifference. Broughton, 622 F.2d at 460.  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs.  Woods, 900 F.2d at 1334.  Furthermore, these tests came out negative even when performed by another physician, Dr. Dhillon, two weeks after Plaintiff's MRI.  Barnett Decl. ¶ 10(k).

noting that he was no longer having trouble ambulating. The recommendation that Plaintiff be given a double-hinged knee brace was from the orthopedic specialist, an outside physician, and was therefore only advisory. Dr. Hamkar choosing not to follow this recommendation is not enough to show deliberate indifference.

Because the Court finds that Dr. Hamkar was not deliberately indifferent, there was no adverse action, and thus no viable retaliation claim. See <u>Watison v. Carter</u>, 668 F.3d 1108, 1114 (9th Cir. 2012) (listing "defendant taking an adverse action" as a requirement for a viable retaliation claim).[5]

Accordingly, IT IS HEREBY ORDERED that:

1. The findings and recommendations filed February 12, 2015 (ECF No. 49) are REJECTED;

2. Defendant's March 26, 2014 motion for summary judgment (ECF No. 41) is GRANTED; and

3. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: March 20, 2015

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[5] Since the Court finds that there was no deliberate indifference or retaliation, there is no need to address Defendant's qualified immunity argument.

8